MONROE COUNTY.

July Term, 1881, No. 118.                      March 8th, 1882.·

## Place *versus* Proctor.

A deed, creating a right of way, conveyed a lot "containing fifty feet on the
race which leads to the grist-mill of the parties of the first part, and fifty feet in
the rear of said race on the north side thereof; . . . . . also the privilege of
water in the said race sufficient to keep in operation a fulling mill and carding
machine, about to be erected by the parties of the second part on the above-de-
scribed lot or piece of land, the water to be taken from the said mill-race near
a certain maple stump on the bank of said race; also a privilege of a road to
cross the said race near said grist-mill to the land above described, and from

thence to the main road." There being a contention as to whether the right of way lay across the head race leading to the mill, or across the tail race immediately below and adjoining the mill, it was *held* that there was a latent ambiguity in the deed, that parol testimony to determine the location of the road was clearly admissible, and that contemporaneous construction by the parties was entitled to great weight.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Monroe County.*

Case by Matthew Proctor against Jacob H. Place, to recover damages for obstructing a road over which the plaintiff claimed a right of way.

Upon the trial in the Court below, before DREHER, P. J., the following facts appeared:

June 1st, 1833, Simon Heller and wife, and William Clark and wife, conveyed to Chauncey Dimmick and John A. Dimmick a lot of land "containing fifty feet on the race which leads to the grist-mill of the parties of the first part, and fifty feet in the rear of said race on the north side thereof, being the same piece of land on which the parties of the second part have made a foundation for the erection of buildings near the said grist-mill; also the privilege of water in said race sufficient to keep in operation a fulling mill and carding machine, about to be erected by the parties of the second part on the above-described lot or piece of land, the water to be taken from the said mill-race near a certain maple stump on the bank of said race; also a privilege of a road to cross the said race near said grist-mill to the land above described, and from thence to the main road; also the privilege of a tail race for the fulling mill about to be erected by the parties of the second part, to intersect the main creek near the tail race of said grist-mill; also the privilege of the banks of the tail race from said grist-mill to the main creek, for the purpose of erecting tenter bars for dyeing cloth."

May 1st, 1857, the grantees conveyed the property to Proctor, the plaintiff, describing it as "being the same piece of land conveyed by Simon Heller and William Clark to Chauncey and John Dimmick, deed bearing date June 1st, 1833, on which a building for fulling and carding, now in the occupancy of the second party; also the privilege of water in said race sufficient to keep in operation a fulling mill and carding machine, the water to be taken from the mill-race near a certain maple stump, or where it formerly stood on the bank of said race; also the privilege of a road from the above-described lot to the main road to cross their tail race near their grist-mill; also the privilege of a tail race from the fulling mill to intersect the main creek," etc.

The title to the grist-mill and the tract of land over which the right of way was granted became vested in the defendant, Place.

The plaintiff claimed the privilege of a road across the tail race of the mill, and in immediate proximity to the mill.

The defendant claimed that under the deed creating the right, the privilege was confined to a road across the head race, above the mill.

The plaintiff offered in evidence the deed from Dimmick *et al.* to Proctor, the plaintiff. The defendant objected to so much of the deed as describes the road as across the tail race, and to that part of the deed relating to the location of the road.

The objection was overruled, and the deed admitted under exception.

The plaintiff testified, *inter alia:*

" I first went there something like forty-five years ago; then on I used the road and bridge up to time I sold to Nutall, March 1st, 1858."

The defendant objected to any evidence showing the use of the highway in question across the tail race to defendant's grist-mill, immediately below the mill.

This objection was made to any such evidence given or to be given by the witness on the stand, or any other witness that might be called by the plaintiff, and was made thus generally to avoid trouble of formal objection and exception to each witness as called.

The objection was overruled, and an exception noted.

The plaintiff then produced a number of witnesses who testified as to the use by him and his predecessors in title of the road across the tail race, from about the year 1832 down to the time the defendant shut the road up in 1877.

The defendant produced a number of witnesses who testified that there was no bridge at this point from 1841 to 1858 which could be driven across. The January freshet of 1841 carried away a bridge which had been there. In the fall of 1858 the defendant put there some large stones, with poles and straw on them, to keep frost out of the wheel-house of the mill.

The Court charged the jury, *inter alia:*

" The contention between the parties is as to the location of the road or right of way granted by this deed. The defendant claims that the description in the deed fixes the location of the road in its relation to the mill and race—where it is to cross the race—above the mill and across the race at the forebay. The plaintiff contends that the road, as granted by the deed, crosses the race below the mill, being across

[Place v. Proctor.]

that part usually called the tail race, immediately where the water from the wheel passes from under the grist-mill. The deed from Heller and Clark calls for the fifty feet on the race which leads to the grist-mill, on the north side of the race; and on this fifty feet the Dimmicks erected their fulling mill and carding machine. The deed also grants the privilege of water in said race sufficient to keep in operation a fulling mill and carding machine, and provides that the water is to be taken from said mill-race near a certain stump on the bank of the race. Evidently this means that the water is to be taken from the head race. Then follows next in order the grant of the right of way in these words: ' Also a privilege of a road to cross said race near said grist-mill to the land above described, and from thence to the main road ;' and then follows the grant of a privilege in these words: 'Also the privilege of a tail race for the fulling mill about to be erected by the parties of the second part to intersect the main creek near the tail race of said grist-mill; also the privilege of the bank of the tail race from said grist-mill to the main creek for the purpose of erecting tenter bars for dyeing cloth.' Evidently the parties intended that the road should pass near the grist-mill, whether it should be located above or below the mill. In the description of the land and the water privilege the deed calls for the race leading to the mill, and then come the words ' also a privilege of a road to cross the said race near said grist-mill.' Said race, this is the same as ' the aforementioned race.' That would be the race leading to the grist-mill; or, in other words, the head race. [There is, however, some ambiguity in the description of the road, and as to the intention of the parties, and I don't feel at liberty to give you positive instructions that the plaintiff is bound to cross the race above the mill, and will leave the question of the location of the road to be determined by the jury under all the evidence in the cause. The question has respect to the intention of Heller and Clark and the Dimmicks, when the deed of June 1st, 1833, was made and delivered.] The plaintiff contends that the use of the road across the tail race, immediately at the mill, by the Dimmicks and himself, shows that it was intended by Heller and Clark that the road should be there. The fulling mill was erected in 1833 or 1834. The owners of the fulling mill used this road across the tail race from the time of the completion of that mill down to January, 1841. This is admitted by the defendant. It is also admitted by the defendant that the owners of the fulling mill used this road from 1858 to some time in 1876, excepting three years, from 1862 to 1866, when there was no business carried on by the owners of the fulling

[*Place v. Proctor.*]

mill in consequence of its having been burned down. The plaintiff alleged that he continuously used the road below the mill from the time he went there, in 1845, down to 1876. From this user of the road the plaintiff contends that the jury will be warranted in finding that the grant of the road as understood and located by the parties was across the tail race below the mill.

" The defendant, relying upon the description in the deed as indicating the head race, contends that the fact of the use of the road below the mill does not show an intention on the part of the grantors, Heller and Clark, to have the road located across the tail race; that that road having been made and a bridge placed across the race for the use of the owners and customers of the grist-mill, and happening to be there when the fulling mill was erected, the owners of the fulling mill simply used it because it was convenient for them to do so; and, further, the defendant alleges that in January, 1841, the bridge was so damaged by a high freshet that it could not be used, and was not passed over with teams, and so remained until 1858, when the defendant, or his predecessors in title, erected the present structure, not for use as a bridge, but to protect his water-wheel from frost; and that the owners of the fulling mill during those seventeen years did not cross the tail race immediately below the mill with teams, but at a point lower down where the two tail races of the fulling mill and grist-mill intersect. From these facts the defendant argues that the use by the plaintiff and his predecessors in title of the road below the mill was simply for their convenience, and by sufferance of defendant and his predecessors in title.

" [Now we propose to leave to you, gentlemen of the jury, the question of the true location of this road across the race of the grist-mill, as granted by Heller and Clark to the two Dimmicks.] The plaintiff has given in evidence the deed from John A. Dimmick to him, dated May 1, 1857, in which this road or right of way is described as crossing the tail race. This deed conveyed to the plaintiff no greater or other right than Dimmick had. If Dimmick did not then have the right of way across the tail race, by virtue of the deed from Heller and Clark, he could not grant a right of way at that point to the plaintiff. [We are therefore thrown back to the deed from Heller and Clark to the two Dimmicks to ascertain the location of the road. You must fix the location of the road from that deed, in the light of the acts and conduct of the parties contemporaneous with and subsequent to the making of the deed.] "

[Place v. Proctor.]

December 20th, 1881. Verdict for the plaintiff for $37.91, upon which judgment was entered.

The defendant then took out a writ of error, assigning that the Court erred in admitting in evidence the deed from Dimmick *et al.* to Proctor, in admitting evidence of the use of a highway across the tail race, and in those portions of the charge within brackets.

*L. M. Burson,* for plaintiff in error.

The plaintiff could in no way get a right from Dimmick unless he had the right to convey. Before the deed was evidence this must have been shown: Insurance Co. *v.* Rosenberger, 3 W. N. C., 16 ; evidence of what took place at the tail race was entirely irrelevant.

There was no ambiguity in the description of the deed, and it was error for the Court to leave the whole question of facts and law to the jury: Potts *v.* Wright, 82 Penna. State, 498 ; Beatty *v.* Insurance Co., 2 P. F. Smith, 456.

*S. Holmes,* for defendant in error.

The language of the deed is inartificial and vague. It does not state where the road is to cross the race. The road obstructed by the defendant crossed the " said race " immediately below the mill. It was a clear latent ambiguity: Phila. Life Ins. Co. *v.* American Life, etc., Ins. Co., 11 Harris, 65 ; Stub *v.* Stub, 3 Barr, 254 ; Bertsch *v.* Navigation Co., 4 Rawle, 130 ; Nixon *v.* McCallmont, 6 W. & S., 159 ; Gould *v.* Lee, 55 Penna. State, 99.

The parol evidence was conflicting, and it took the whole case to the jury : Edelman *v.* Yeakel, 3 Casey, 26 ; Miller *v.* Fichthorn, 7 Casey, 252 ; Reynolds *v.* Richards, 2 Harris, 205 ; Beatty *v.* Insurance Co., 2 P. F. Smith, 456 ; Sidwell *v.* Evans, 1 Penna., 386 ; Curcier *v.* Insurance Co., 5 S. & R., 114 ; Stoever *v.* Stoever, 9 S. & R., 434.

MARCH 27TH, 1882.—PER CURIAM: There was certainly a latent ambiguity in the deeds: " A road to cross the said race near grist mill," might have intended either the head or tail race. Under such circumstances, parol evidence was clearly admissible and the contemporaneous construction of the parties was entitled to great weight.

We think, therefore, that the question was fairly submitted to the jury.

Judgment affirmed.